IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOHN WILLIAM THOMPSON,<br><br>        Petitioner,<br><br>    v.<br><br>DAVID L. RUNNELS, Warden,<br><br>        Respondent. | No. C 03-2711 SBA (PR)<br><br>**ORDER** |

This matter comes before the Court on Petitioner's Motion for Stay and Abeyance [Docket No. 21].

**BACKGROUND**

Petitioner was convicted of first degree murder in Humboldt County Superior Court on March 13, 1989. The victim was Verl Patton, a homeless person who was shot once through the head with a .22 caliber bullet. Patton was found on an abandoned warehouse dock known as the Pigeon Coop, in the Old Town section of Eureka. Petitioner was sentenced to twenty-five years to life in prison. According to Petitioner, the case against him had three principal components: (1) his admissions to his ex-wife and step-daughter that he shot the victim; (2) his statements to the police; and (3) circumstantial evidence. Motion at 4.

On direct appeal, Petitioner argued that he received ineffective assistance of counsel, in part because his attorney failed to present the testimony of an eyewitness, Ernest Turtle. According to Petitioner, Turtle would have testified that he observed the shooting of Verl Patton by Ruben Fragoso, aka "Chopi," and that Petitioner was not the shooter. Motion at 4. The California Court of Appeal expressed the view that trial counsel was probably deficient. Specifically, counsel's failure to make greater efforts to locate Ernest Turtle prior to trial, and to make a motion to suppress Petitioner's statement to the District Attorney's investigator, fell below the standard of reasonableness. Baxter Decl. Ex. A. However, the court denied Petitioner's ineffective assistance of counsel claim on the ground that Petitioner was not prejudiced: Turtle was heavily intoxicated

1  when he witnessed the murder and likely would not have been a credible witness, and the statement
2  that should have been suppressed amounted to "a complete denial of any involvement in the
3  shooting," so its admission probably did not affect the outcome of the trial. *Id*. at 24. More
4  importantly, the case against Petitioner was very strong. In addition to his admissions to Thompson
5  and Johnson, he was seen in the days preceding the shooting carrying a rifle, which he destroyed
6  after the shooting and which was the same caliber as the weapon that killed the victim. Further,
7  another witness, Connie Cummings, testified that Petitioner called her house the night of the
8  shooting and asked her to bring him his rifle. Baxter Decl. Ex. B. Thus, there was no reasonable
9  probability that counsel's errors affected the outcome of the trial. The Superior Court of Humboldt
10 County, reviewing Petitioner's state habeas petition, made a similar determination. Baxter Decl. Ex.
11 B.
12    Subsequently, Petitioner filed a federal habeas petition. The first petition was dismissed for
13 failure to state cognizable federal grounds and for untimeliness. Petitioner filed an amended petition
14 on May 20, 2004, raising the following claims: (1) that he was denied the opportunity to present his
15 affirmative defense through the testimony of Ernest Turtle, and (2) ineffective assistance of counsel.
16 On March 3, 2006, the Court issued an Order to Show Cause why the petition should not be granted.
17 The Order stated that Petitioner had raised claims cognizable in a § 2254 petition, and that he had
18 fully exhausted his remedies with respect to each of the claims. With respect to timeliness, the
19 Court found that Petitioner had alleged sufficient facts to demonstrate that he may be entitled to
20 equitable tolling.
21    On May 2, 2006, Respondent filed a Motion to Dismiss the habeas petition as untimely. In
22 June 2006, Joseph Baxter substituted in as Petitioner's counsel. After receiving an extension of time
23 to file an opposition to the Motion to Dismiss, Petitioner filed the instant Motion to Stay and Abey
24 on August 3, 2006 (rather than filing an opposition to the Motion to Dismiss).

## **LEGAL STANDARD**

26    The general rule is that a district court must dismiss a federal habeas petition containing
27 claims that were not exhausted in state court. *See Rose v. Lundy*, 455 U.S. 509, 522 (1982).
28 However, district courts have authority and discretion to stay mixed petitions to allow the petitioner

2

to exhaust claims in state court. *Rhines v. Weber*, 544 U.S. 269, 276 (2005).  Stay and abeyance should be used only in limited circumstances.  "Because granting a stay effectively excuses a petitioner's failure to present his claims first to the state courts, stay and abeyance is only appropriate when the district court determines there was good cause for the petitioner's failure to exhaust his claims first in state court.  Moreover, even if a petitioner had good cause for that failure, the district court would abuse its discretion if it were to grant him a stay when his unexhausted claims are plainly meritless."  *Id*. at 277.  "On the other hand, it likely would be an abuse of discretion for a district court to deny a stay and to dismiss a mixed petition if the petitioner had good cause for his failure to exhaust, his unexhausted claims are potentially meritorious, and there is no indication that the petitioner engaged in intentionally dilatory litigation tactics."  *Id*. at 278.  A mixed petition should not be stayed indefinitely; the district court should "place reasonable time limits on a petitioner's trip to state court and back."  *Id*.

## **ANALYSIS**

Petitioner argues that he is entitled to a stay based on newly discovered evidence.  This evidence consists of two declarations, one from Petitioner's ex-wife Eva Thompson, and one from his step-daughter Eva Marcia Johnson Barber.  Both of them testified against Petitioner at his trial.

Ms. Thompson's declaration states, in relevant part: "I did not want to testify since I had very little information to offer.  However, Keith Taylor, the manager of the Humboldt County Indian Justice Project (I am a Native American) would not accept all that I truthfully told him and coerced me to testify against John Thompson."  Thompson Decl. at ¶ 4.  She states that Petitioner consistently refused to talk to her about the "incident," but that she was harassed by the police and by Mr. Taylor after it occurred.  *Id*. at ¶¶ 5-8.  Thompson states that Taylor threatened to have her children taken away if she did not testify against Petitioner, and threatened to press charges against her daughter Eva Johnson.  *Id*. at ¶ 10.  According to Thompson, "[a]t a certain point, it all became too much," and she agreed to testify against Petitioner.  *Id*. at ¶¶ 11, 12.  However, she maintains, Petitioner never admitted to her that he killed Verl Patton.  *Id*. at ¶ 13.  Thompson states her belief that Ruben Fragoso (aka Chopi), not Petitioner, killed Verl Patton, but this belief is based on the testimony of Ernest Turtle, not on anything Petitioner told her.

3

1 Ms. Johnson's declaration states that Keith Taylor put intense pressure on her and her mother 2 to testify against Petitioner. Johnson Decl. at ¶ 2. She states that she did not want to be separated 3 from her mother, and that she wanted to see Petitioner arrested because she did not like the way he 4 treated her and her mother. *Id*. at ¶ 4. She says, "I know very little about the incident which led to 5 the charges against John Thompson. The little I knew was mostly from my mom." *Id*. at ¶ 3. 6 However, she also says that "[a]t no time did my stepfather John Thompson ever say that he shot or 7 killed somebody. On the contrary, on the only occasions he talked about the incident, he said that 8 Chopi shot the victim. who I later learned was Verl Patton." *Id*. at ¶ 6.

9 These declarations were obtained by Petitioner's counsel in July 2006, shortly after he began 10 representing Petitioner. According to Petitioner, the declarations constitute newly-discovered 11 evidence, because although "he may have known that [Thompson and Johnson] testified falsely in 12 court, he had absolutely no way of proving it." Motion at 7. Petitioner states that he did not know 13 until receiving the declarations that Johnson and Thompson were pressured to testify; he states that 14 he has had very little contact with these witnesses while incarcerated. John Thompson Decl. at ¶¶ 1-15 3. It was only due to the efforts of counsel that these two witnesses have recanted their trial 16 testimony.

17 The first question is whether or not the petition is now "mixed." The stay and abeyance 18 procedure only applies to petitions with some exhausted claims and some unexhausted claims. 19 When a federal habeas petitioner presents new evidence "such as to place the case in a significantly 20 different and stronger evidentiary posture than it was when the state courts considered it, the state 21 courts must be given an opportunity to consider the evidence." *Aiken v. Spalding*, 841 F.2d 881, 883 22 (9th Cir. 1988) (quoting *Dispensa v. Lynaugh*, 826 F.2d 375, 377 (5th Cir. 1987)). However, if the 23 new evidence does not "fundamentally alter" a claim already presented to the state courts, but 24 simply provides additional support for the claim, then there is no failure to exhaust. *Landrigan v.* 25 *Schriro*, 441 F.3d 638, 648 (9th Cir. 2006) (en banc). The Court finds that the new evidence 26 Petitioner seeks to present should be considered first by the state courts – recantations of key 27 prosecution witnesses is more than mere support for existing claims. Instead, Petitioner is making a 28 new claim of actual innocence. Thus, the petition is now mixed, and a stay should be granted if the

4

*Rhines* test is met.[1]

Accordingly, the Court must decide whether there is good cause for Petitioner's failure to exhaust. There is little case law on what constitutes "good cause," but the Ninth Circuit has held that an "extraordinary circumstances" test should not be applied. *Jackson v. Roe*, 425 F.3d 654, 661 (9th Cir. 2005). Respondent argues that Petitioner did not exercise "due diligence to obtain the declarations" he now seeks to present to the state court, because he admits that he knew all along that the two witnesses had testified falsely at his trial. Petitioner claims that although he may have believed that they testified falsely, he was unable to conduct an investigation and obtain evidence of that until after he obtained counsel. Respondent contends that pro se status is no excuse. It is true that in the context of the "cause and prejudice" standard for overcoming a procedural bar to a habeas petition, a pro se petitioner's lack of knowledge of the law does not constitute cause. *See Hughes v. Idaho State Bd. of Corrections*, 800 F.2d 905, 909 (9th Cir. 1986). But the "cause" standard for overcoming a procedural bar is not necessarily the same as "good cause" for obtaining a stay. At least one court in another district of this circuit has held that they are the same, *see Hernandez v. Sullivan*, 397 F. Supp. 2d 1205, 1206-07 (C.D. Cal. 2005). However, another court has articulated a standard under which good cause is shown if "a justifiable, legitimate reason exists which warrants the delay of federal proceedings." *Briscoe v. Scribner*, 2005 WL 3500499 at \*2 (E.D. Cal. 2005). This Court finds the latter standard to be persuasive. There may be any number of reasons why the witnesses did not recant their trial testimony until now, which have nothing to do with Petitioner's lack of diligence. Thus, the Court finds that there was good cause for Petitioner's failure to exhaust.

---

[1] Arguably, this is an exhausted petition to which Petitioner wishes to add an unexhausted claim (not a mixed petition). The Ninth Circuit had, before *Rhines*, adopted a three-step procedure in which unexhausted claims were dismissed, the exhausted petition was held in abeyance while the unexhausted claims were exhausted, and the petitioner was then allowed to amend the petition to reinsert those claims. *See Jackson v. Roe*, 425 F.3d 654, 658-59 (9th Cir. 2005). "The two approaches are distinct: *Rhines* applies to stays of *mixed* petitions, whereas the three-step procedure applies to stays of *fully exhausted* petitions and requires additional steps – the amendment of the original mixed petition and a second amendment to add the newly exhausted claims." *Id*. at 661. The Ninth Circuit has not decided whether the standard articulated in *Rhines* applies to the three-step procedure, but it did comment that the three-step procedure seems unnecessarily cumbersome and may fall into disuse after *Rhines*. *Id*. *Rhines* articulated the standard district courts should use in deciding whether or not to grant stays in habeas cases and that standard should apply whether this is viewed as a mixed petition or an exhausted petition to which new claim will be added after it is exhausted.

Respondent makes a conclusory accusation that Petitioner's failure to ask the two witnesses to recant their trial testimony constitutes intentional delay, but offers no factual or legal support for its assertion. The Supreme Court's concern about dilatory tactics in *Rhines* was primarily directed to prisoners facing the death penalty: "not all petitioners have an incentive to obtain federal relief as quickly as possible. In particular, capital petitioners might deliberately engage in dilatory tactics to prolong their incarceration and avoid execution of the sentence of death." *Rhines*, 544 U.S. at 277-78. Petitioner is not on death row; he has every incentive to have his habeas petition reviewed on the merits quickly. Thus, the Court finds that Petitioner has not engaged in intentionally dilatory litigation tactics.

However, the more difficult question remains: is Petitioner's unexhausted claim potentially meritorious? Respondent argues that Petitioner is not entitled to a stay because his actual innocence claim is "is not cognizable on federal habeas review." Opposition at 4 (citing *Hererra v. Collins*, 506 U.S. 390, 400 (1993)). However, this is an overstatement. *Herrera* actually said that, in non-capital cases, "[c]laims of actual innocence based on newly discovered evidence have never been held to state a ground for federal habeas relief absent an independent constitutional violation occurring in the underlying state criminal proceeding."

Petitioner is not attempting to establish a "free-standing" actual innocence claim in contravention of *Herrera*. Rather, as Respondent acknowledges, the new declarations and claim of actual innocence are intertwined with Petitioner's claim of ineffective assistance of counsel.[2] As noted, the state courts indicated that Petitioner's counsel was most likely deficient, but rejected his ineffective assistance claim because there was no prejudice. The prejudice calculus may be altered by the fact that Thompson and Johnson now recant their testimony.

---

[2] In his reply brief, Petitioner also argues that the new declarations form the basis for a new claim of violation of *Brady v. Maryland*, 375 U.S. 83 (1963), which holds that the prosecution must disclose material exculpatory evidence to the defense. However, Petitioner offers absolutely no factual support for the assertion that the prosecution knew that the two witnesses testified falsely and failed to disclose that to the defense. Thompson and Johnson state that they were pressured to testify by Keith Taylor; they do not claim that Taylor was acting on the instructions of the district attorney or that they were pressured directly by anyone on the prosecution team. They do not say that the prosecution knew that their testimony was false, either at the time of trial or anytime thereafter. Thus, unless Petitioner has some other evidence, his *Brady* claim is not colorable.

The Ninth Circuit has held that the petitioner must show that "the newly discovered evidence probably would have resulted in his acquittal" in order to merit habeas relief. *Jeffries v. Blodgett*, 5 F.3d 1180, 1187-88 (9th Cir. 1993). "Evidence which suggests only that some other individual might have committed the crime rather than showing that the defendant did not commit the crime is insufficient to meet the 'probability of acquittal' standard." *Id*. Petitioner asserts that, "while the evidence is still in conflict, the weight of the evidence now points to actual innocence." Motion at 8. However, even taking into account Turtle's testimony that another man killed Verl Patton, the Thompson and Johnson recantations, and the exclusion of Petitioner's statement the District Attorney's investigator, Petitioner admits that there remains circumstantial evidence against him. *Id*. at 9. In particular, the fact that Petitioner was seen with a rifle before the shooting, asked for his rifle on the night of the shooting, and destroyed the rifle after the shooting is strong circumstantial evidence of his guilt.

However, *Rhines* simply asks whether the unexhausted claim is "plainly meritless." 544 U.S. at 277. Although the Court doubts that the new declarations will probably result in Petitioner's acquittal, his claim of actual innocence combined with his claim of ineffective assistance of counsel is not plainly meritless. The new declarations certainly add strength to the prejudice prong of his ineffective assistance claim. Accordingly, the state court should have the opportunity to decide Petitioner's claims in light of the new evidence.

Respondent argues that Petitioner's actual innocence claim has no likelihood of success because it is untimely, just as the rest of his habeas petition is untimely. Opposition at 2. As noted in the Order to Show Cause, Petitioner may be entitled to equitable tolling because he retained an attorney to pursue a federal habeas petition in 1997, and the attorney failed to file anything. *See Spitsyn v. Moore*, 345 F.3d 796, 799 (9th Cir. 2003) (holding that equitable tolling was appropriate where an attorney was retained to prepare a petition and failed to do so). In addition, AEDPA provides in relevant part that the one-year limitations period runs from "the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence." 28 U.S.C. § 2244(d)(1)(D). As discussed, it appears that the facts at issue here were

7

1 undiscovered until this late date for reasons other than Petitioner's lack of diligence.[3] Accordingly,
2 the Court finds that there is a reasonable possibility that Petitioner's unexhausted claims are timely,
3 and thus they "potentially meritorious."  The *Rhines* test is satisfied.

4 Finally, Petitioner requests that the Court appoint counsel, as he is unable to continue paying
5 Mr. Baxter.  John Thompson Decl. at ¶ 4.  The Sixth Amendment's right to counsel does not apply in
6 habeas corpus actions.  *See Knaubert v. Goldsmith*, 791 F.2d 722, 728 (9th Cir.), *cert. denied*, 479
7 U.S. 867 (1986).  However, a district court is authorized to appoint counsel to represent a habeas
8 petitioner whenever "the court determines that the interests of justice so require" and such person is
9 financially unable to obtain representation.  18 U.S.C. § 3006A(a)(2)(B).  The decision to appoint
10 counsel is within the discretion of the district court.  *See Chaney v. Lewis*, 801 F.2d 1191, 1196 (9th
11 Cir. 1986), *cert. denied*, 481 U.S. 1023 (1987); *Knaubert*, 791 F.2d at 728.  Appointment is
12 mandatory only when the circumstances of a particular case indicate that appointed counsel is
13 necessary to prevent due process violations, *see Chaney*, 801 F.2d at 1196, and whenever an
14 evidentiary hearing is required, *see* Rule 8(c) of the Rules Governing Section 2254 Cases; *United*
15 *States v. Duarte-Higareda*, 68 F.3d 369, 370 (9th Cir. 1995); *Bashor*, 730 F.2d at 1234.  The Court
16 finds that the appointment of counsel is not necessary at this time.

17 **CONCLUSION**

18 For the foregoing reasons, Petitioner's Motion for Stay and Abeyance is GRANTED.
19 Petitioner's request for appointment of counsel is DENIED.

20 IT IS HEREBY ORDERED THAT Petitioner shall pursue state court remedies within 30
21 days after the stay is entered.  Petitioner shall notify this Court within 30 days after state court
22 proceedings are complete.  *See Rhines*, 544 U.S. at 278 (quoting *Zarvela v. Artuz*, 254 F.3d 374, 381
23 (2d Cir. 2001) (stating that such a timeline is normally appropriate)).

---

[3] Further, the new claim may "relate back" to the original claims.  An amended habeas petition filed after AEDPA's one-year statute of limitations may still be timely if it relates back to the original, timely-filed petition.  The Supreme Court has held that, "[s]o long as the original and amended petitions state claims that are tied to a common core of operative facts, relation back will be in order." *Mayle v. Felix*, 545 U.S. 644 (2005).  It is also worth noting that the Ninth Circuit has suggested that, where a petitioner makes a sufficient showing of actual innocence, the AEDPA statute of limitations may be overridden.  *Majoy v. Roe*, 296 F.3d 770, 776 (9th Cir. 2002).

8

IT IS FURTHER ORDERED THAT the clerk shall administratively close this case. The case will be reopened and the stay vacated upon notification by Petitioner that state court proceedings are complete. *See Aguro v. Woodford*, 2006 WL 889473 at *2 (N.D. Cal. April 5, 2006) (Hamilton, J.) (granting stay and ordering the clerk to administratively close the case).

IT IS SO ORDERED.

DATED:_9/29/06

SAUNDRA BROWN ARMSTRONG
United States District Judge